First case this morning is Williams v. Doles, and that's case number 417-0032. For the appellant, we have David Moore for the affiliate, Nathan Cole. Mr. Moore, please proceed. Thank you. May it please the Court? Counsel, I'd like to focus my remarks this morning on what I believe to be the primary issue before this Court, and that being whether or not the plaintiff received a fair trial. And in arguing that the plaintiff did not receive a fair trial, I want to further focus my remarks on two areas, the first being the trial court's exclusion of the coroner's report and the death certificate. It is the plaintiff's position that these records are admissible under the Illinois Rules of Evidence, and they were also prepared by the coroner in the ordinary course of the coroner's business. Now, the reason why these matters were important is because it was the plaintiff's theory at trial that the defendant, Dr. Doles, committed professional negligence in one of two ways, either by failing to immobilize the plaintiff or by failing to keep the plaintiff on blood thinner sufficiently. The trial court's exclusion of the coroner's report and the death certificate undercut the plaintiff's argument because the death certificate states that a cause of Mrs. Williams' death was immobility as a result of her surgical repair. The death certificate states that there was no autopsy. I'm sorry? The death certificate says there was no autopsy. That is correct. So how does it come into evidence as proof of death, of cause of death? Because it was prepared in the ordinary course of business, I do not believe that an autopsy is required in order for a death certificate to become admissible. I do not believe that there was a controverted issue of fact as to the cause of her death. She died as a result of pulmonary embolisms. The statute, section 115-5.1, regarding business records says that the records referred to in this section shall be limited to the records of the results of post-mortem examinations of the findings of autopsy and toxicological laboratory examinations. How do you explain your argument as to why it comes in based upon that link? Well, the argument that I have is that it is admissible under section 822-01 of the Code of Civil Procedure, which states that, and also the case law of that, I'd say the Heights v. Hogan, which was the controlling principle at the time, that coroner's records are admissible into evidence. And I believe that that still is controlling case law in this district. Therefore, I believe that the coroner's report and the death certificate are admissible. Because they were not admitted in this case, the plaintiff's ability to effectively argue that Dr. Dole's failure to mobilize Mrs. Williams was a contributing factor in the cause of her death. Is that what your expert said? Yes. If that's what your expert said, then it was before the jury anyway. Well, yes, but the basis, and Dr. Hotalkar, his testimony was limited by the trial court in a couple of ways. One, because the basis of his report, that being the coroner's report and the death certificate, which he did review and he did testify that those were part of the basis of his opinions, were something that he relied upon but not admissible. And I think that those records really should have been admitted into evidence to fully allow the trier of fact to examine all the bases of the plaintiff's theory of the case. Secondly, with regards to Dr. Hotalkar, the trial court precluded Dr. Hotalkar from explaining the bases of his opinions, that being the literature search that he prepared. Now, the defendant objected, saying that that's hearsay. It is not hearsay to allow an expert to testify as to the basis of his opinions. The Illinois Supreme Court has made very clear that an expert's opinion is only as sound as the basis upon which it relies. And if the trial court unnecessarily limits the basis, then that adversely affects the ability of the trier of fact to assess his credibility. Based upon these two items, I believe that the plaintiff did not receive a fair trial, and we would ask that the matter be reversed and remanded for a new trial. Thank you. Thank you very much. We'll have rebuttal. Mr. Colt. May it please the Court. An abuse of discretion is defined as a decision that is arbitrary, fanciful, unreasonable, or a decision in which no reasonable person could adopt the view taken by the trial court. In regards to this death certificate, the plaintiff is arguing that this was admissible and necessary under the rule of criminal procedure 115-5.1, which creates a business records exemption that can apply to death certificates, provided they meet the other requirements. We believe that is, as Your Honor said, limited to autopsies, as the statute says. But more importantly, 58-2201 is a specific statute that deals exactly with this type of case, which is wrongful death cases involving negligence. This was a wrongful death case based on negligence. That statute says that coroner's records cannot be used to prove any fact in controversy. And we would agree that pulmonary embolism was the recognized cause of death, but the fact that it was secondary to immobility was very much in controversy. And to allow this record in without an autopsy having been performed, a record that is sealed and looks very official, the jury interprets that as a fact. And it's not. It's an opinion. The case law says that that is an opinion absent some type of autopsy. And as Your Honor pointed out, in this case, there was no prejudice, because the plaintiff's expert testified regarding his opinion as to the cause of death. He testified regarding his basis for that opinion, which included his review of the coroner's records. When you have two statutes or rules that are at war with one another like we do here, the specific controls over the general. So to that extent, 582201 is the correct statute to apply, and that precludes the death certificate from evidence. That decision was based on an accurate reading of the law and was not an abuse of discretion. The second issue that plaintiff raises is the evidentiary issue regarding the specific titles and authors of the articles that his expert reviewed. Now, the plaintiff claims that this evidence should have been admitted to establish the basis of his expert's opinion. And we agree that evidence must be admitted to establish that basis, but where we disagree is that we believe the basis was established. The plaintiff's expert specifically testified that he reviewed the medical records, that he was relying on his training, his experience having done hundreds, if not thousands of similar procedures, and his review of what he considered to be the relevant and authoritative medical literature. That established the basis of his opinion. The jury was aware that he was basing it on all of those things. So adding these titles would not have assisted the jury in deciding this case. The jury would have been unfamiliar with these articles. They would have been unfamiliar with these authors. The only effect that this could have had on the jury was an impermissible bolstering of his credibility by suggesting that these other authors, who are not available for cross-examination, and therefore their opinions are entirely hearsay, suggesting that they agree with him. The Kochen case, which we cited in our brief, says that that is not a permissible way to use authoritative articles. And if you look at some of these articles... Would you suggest that if he had three authoritative articles that he relied upon, and he provided copies of those to counsel, and testified briefly about why he selected those three articles, would that be permissible? No, Your Honor, I don't think it would. Because the fact is that he reviewed articles. He's basing his opinion on his review. I don't think we need to bootstrap in these articles in order to establish the basis for his opinion. I think, would he be permitted to say, I studied under or watched an autopsy by a Nobel Prize winning surgeon, and I learned from him some of the things that I have... I think some of my conclusions are based upon my study with him. And let's say his name would be one that would be recognizable to the jury, or at least possibly recognizable. Would he be permitted to testify to that? No, Your Honor, and the reason is, again, that would be using the credibility of this other known individual, this other person who's not in the courtroom to be cross-examined, to lend weight to his testimony. Well, can't you examine the credibility of the... I mean, you know, there's a difference between the New England Journal of Medicine and some men's health publication. Certainly. If he designated the articles, could you examine those? You wouldn't have the author there, but you'd have the reputation of the journal. You'd have information upon which you could cross-examine. We certainly could cross-examine, Your Honor. I still believe that it's hearsay evidence that is potentially very damaging. And one of the things about some of the titles of these particular articles is they... there's an inherent risk to some of these titles because they suggest the ultimate answer in this case. And they do so in a way that, again, these authors aren't there to lend their opinions or be cross-examined. Some of these articles, the titles include duration of deep venous thrombosis in the surgical patient and its relation to quality issues. Another one is thromboprophylaxis in orthopedic surgery. How long is long enough? Another is evidence-based guidelines for venous thromboembolic prophylaxis. The guideline wars are over. Those titles suggest that there is a consensus, that there is an answer to the question that the jury is being asked about. And all the other experts testified that there is no consensus. And so to allow these articles to be recited simply puts this in the mind of the jury that, well, we should listen to the plaintiff's expert because he cited these articles and they have the right answer. You don't have the ability to cross-examine where his degree is from. The people who gave that physician his degree are not available. No, Your Honor, that's true. They are not. His professors aren't available. The grades he received, the awards that he won, or the honors, or the articles that he wrote, you don't have the editorial board there to examine them, why they thought that article was okay and why it was published in the Lancet or the New England Journal of Medicine. But we let that stuff in. He gets to talk about it. I'm a hot shot because I'm from John Hopkins. Your Honor, that goes directly to his qualifications. And his qualifications are at issue, but not the qualifications of the authors of these articles. The last thing I would touch on in this regard is that there really was no prejudice, as I alluded to earlier, to keeping this evidence out, simply because these articles would have been unfamiliar to the jury. They wouldn't have added to their understanding of the case. The only thing it could have done is bolster the credibility of the plaintiff's expert impermissibly. Now, I would briefly just touch on the jury instructions issues because those were raised in the brief. We believe that the issues instruction selected by the court was the proper one, as supported by the plaintiff's expert's own testimony. The jury instruction that was selected was that there was a breach because there was a failure to prescribe deep venous thrombosis prophylaxis for an adequate length of time. That's directly supported by the plaintiff's own expert's allegation, which is, and I quote, I believe that her prophylaxis, either chemical itself or a combination of chemical or mechanical, should have been continued for a longer duration. Because the instruction proffered by the defense succinctly and accurately stated the sole issue the jury was being asked to decide, it was the appropriate instruction, the plaintiff's instruction, as we argue in our brief, is vague, it's confusing, and it allows for the jury to find something that isn't supported by the evidence. The last issue in regards to the jury instructions involves the missing evidence instruction, which was requested but denied. That was based on evidence that there really is no reason to believe ever existed. Dr. Doles testified that he had no independent recollection of the visit and had no independent recollection of making a progress note that is alleged to be missing. Therefore, there's no real reason to believe this ever existed. If it didn't exist, it can't be missing. In addition, the other requirements for a missing evidence instruction are absent here as well. The court gave a very well-reasoned argument regarding why he was rejecting that, and we would rely on that and the statements we make in our brief. I also have a question for you. Yes. The opposing counsel has said that Heights v. Hogan should control whether the death certificate should have been admissible in this case. Further, I believe counsel has suggested that you didn't even respond to that case. What's your answer to that? Well, Your Honor, Heights v. Hogan did not address the issue before the court, which is which of these two statutes should control. Heights v. Hogan dealt with the constitutionality of 115-5.1. So what I would say is that that case does not address this issue, and when you're faced with this situation where there are two statutes or rules that are seemingly at odds with one another, you select the more specific under the tenets of statutory construction, and that is 5A2201. Thank you. Thank you. Any rebuttal? Your Honor, I ask Your Honor if you're willing to accept questions from the bench if there are any additional questions. I don't see any, so thanks to both of you. Thank you so much. Appreciate your arguments. The case is submitted, and the court stands in recess.